Good morning. My name is Patrick Morales-Hoyle and I'm here on behalf of Mr. Thomas Gallagher. Good morning. Assistant State's Attorney Christine Cook on behalf of the people. And I would like to reserve just a couple of minutes for her book. May it please the court. I plan to focus today on the first two issues addressed in the briefs. First, this court should reduce Mr. Gallagher's conviction from residential burglary to criminal trespass to a residence because the state failed to prove that he had an intent to commit theft when he entered Mr. Burks' hotel room. Second, he was denied a fair trial because the jurors themselves should have had the opportunity to convict him of criminal trespass to a residence. But his attorney at trial made a legal error and offered the instructions on the wrong lesser-included offense. The evidence at trial did not support a finding that he had an intent to commit theft when he entered the room or that he actually stole $40 from Mr. Burks. There was no evidence of forced entry, no burglary tools were recovered, and two of the three people in the room remained asleep when he entered, which supports his testimony that the door was ajar and he thought it was empty when he approached. He never advanced past the room's doorway. And contrary to a statement in the state's brief, Mr. Burks never saw Mr. Gallagher holding any of his property, including his wallet. 75- No, he never advanced past the doorway. Well, Mr. Burks testified that he never saw him past the doorway. He said he saw him in the doorway next to the- But Mr. Burks was asleep when the guy first came into his room, wasn't he? That's true. Both, their testimony was consistent on that point. Mr. Gallagher said when he got to the room, he never advanced past the doorway. He opened the door slightly. It was ajar. And at that point, he saw bags and people and realized the room was occupied and started to back out. That was consistent with what Mr. Burks said, which is that he saw Mr. Gallagher backing out of the room facing forward, which I think indicates that he hadn't gotten that far into the room because he was still backing out. Doesn't indicate that at all. It indicates that that's when Mr. Burks saw him. But, you know, all right, go ahead, tell me. I think the other evidence in the case also supports a finding that he didn't have such an intent. The table where the money supposedly disappeared from, there was more money left on the table and credit cards. Also, Mr. Burks never reported the theft of $40 to the police. And finally, Mr. Gallagher had $4,400, nearly $4,400 of his own money in his backpack, which I think also calls into question whether or not he had an intent to commit theft when he entered that hotel room. I also was talking about the fact that it was not reported to the police. It wasn't reported to the security people in the hotel. It was recorded to Ms., Mr. Burks testified that he reported it to Ms. Hampton, but there's two interesting things about his testimony on that point. First, he said he waited an hour to report it to her. And his reason for waiting an hour was because he was talking to the police, but he didn't report the theft to the police. He also said that when he reported it to Ms. Hampton, he said he may have been missing $40. Not that he definitely was missing $40. And that contradicts his earlier testimony, which was that as soon as he got back from the elevator from pursuing Mr. Gallagher, he knew exactly $40 were missing because his girlfriend had already been counting it. So I think he did report it to Ms. Hampton, but I think those two facts sort of discredit whether or not he was so. At trial, he was very sure $40 was missing. At the time, he was less than sure, and he never told the police. Is that a credibility question? I mean, is that a credibility question? It is a credibility question. Unfortunately, the jury didn't have the opportunity to consider the lesser included offense here of criminal trespass to a residence. And the only difference- I'm just asking about the narrow question of the certainty about whether $40 was missing or $40 wasn't missing to be reported, or I mean, those little inconsistencies surrounding the $40. Is that a credibility issue for the jury to resolve? It is a credibility issue. I mean, essentially this case boiled down to a credibility contest between Mr. Gallagher and Mr. Burks. Good point. So if that's the case, how are we to weigh the credibility of the witnesses when we're not looking at them and the jury was? Well, I think there's a couple. I have a couple responses to that. First is when there's a question of credibility, the Illinois Supreme Court and the U.S. Supreme Court have both recognized that in cases like this, juries need an important third option of convicting of a lesser included offense. They didn't have that option there. That's because when a jury is faced with- when they think a defendant has committed some crime, but they're unsure of whether or not they've committed the crime charged, they're more likely to convict of that greater offense than to acquit. On the whole, this is a perfect example of that. Mr. Gallagher admitted on the stand that he had committed the crime of trespass. And so the jury's going to have a very difficult time acquitting a man who's admitted committing a crime in front of them. But secondly, in a case like this where it does come down to the credibility of two witnesses, there's the chance that other errors could tip the balances against Mr. Gallagher. In this case, there was prosecutorial error during the closing arguments. And these remarks during closing arguments specifically went to Mr. Gallagher's credibility and Mr. Burks' credibility. In particular, the state kept out, was able to keep out of evidence, direct evidence that Mr. Gallagher was a painter. They kept out the examples of his artwork from the record. But then during closing arguments, they implied that he had lied about being an artist, that if he was an artist, he'd have paintbrushes in his backpack that night, and that he was really a career thief. That went to- How was the fact that he was a painter and or artist kept out? I mean, why didn't he testify to that? He did testify to it, but he wasn't allowed to establish it definitively by showing his artwork. And it may have been appropriate that actually introducing examples of his artwork, that those actual examples are irrelevant. But at that point, it's inappropriate for the state to then undermine that claim in closing arguments when he wasn't allowed to demonstrate definitively, you know, demonstrate to the jury proof that he was an artist. That testimony was in the record, though. Yes, it was in the record that he was an artist. He did testify to that. And was $40 ever recovered from any of his person or property? No, I think that's a very important point. No proceeds were recovered. Officer Corral, the state's police witness, specifically testified that nothing that he- he searched Mr. Gallagher. He said nothing that he found on Mr. Gallagher was reported as stolen. Nothing found on Mr. Gallagher was ever returned to any victim, and that included any money to Mr. Burks. He said that if Mr. Burks had reported a theft of $40, he would have included it in the police reports, which makes sense because they were there investigating an alleged burglary. And at the end of trial, Mr. Gallagher requested the over $4,300 that was confiscated from him back. And the state did not request that $40 of that be returned to Mr. Burks. I don't think there's any evidence that Mr. Burks ever asked for the money to be returned to him that was allegedly taken. And to me, I think that goes to the credibility about his claim about $40. Not that he necessarily lied, but that over the course of two years since the trial occurred, he had maybe convinced himself that $40 was missing because he didn't initially report it to the police. And he didn't ask for it back. And this is a man who was pretty vigilant in pursuing Mr. Gallagher after this incident took place. Can you talk a little bit about your argument regarding the lesser included offense? You touched on it. Yes. Well, I actually think this is a pretty straightforward case of ineffective assistance, because I think this is a quintessential case where a lesser included instruction is necessary. As the state pointed out in its brief, Mr. Gallagher's counsel indicated to the court months before trial that he was planning on eliciting a lesser included offense instruction. He then pursued a trial by requesting a lesser included offense instruction, but he chose the wrong one. He chose criminal trespass to real property rather than criminal trespass to a residence. The state recognizes that criminal trespass to real property was not the correct offense. They've also recognized that criminal trespass to a residence is a lesser included offense of residential burglary, which is a proposition that this court has recognized a number of times. So he chose, he had the strategy, but he failed to execute the strategy because he made a legal error and requested the wrong instruction. Finally, I think the prejudice is clear, because the jury saw the evidence as close. They said they were deadlocked, and the only issue they had to decide was the intent issue. They, you know, this is a pretty simple trial. There were only four witnesses. There's no physical, there's not a lot of physical evidence, no expert testimony. Yet they had to be sequestered overnight before they could reach a verdict. And finally, it's prejudice. Why do you think that's important? That they had to be sequestered? Well, in this case, Mr. Gallagher had conceded the first two elements of residential burglary. He said that he entered the residence and that it was unauthorized. The only issue for the jury to decide was whether or not he had an intent to commit theft when he entered the room. So when the jury reports that they're deadlocked, when the jury requests a transcript of Mr. Burks' testimony, and when they eventually have to be sequestered because they can't come to a decision, I think it indicates that they're struggling with this. And that if they had the option to convict of criminal trespass to a residence, that is a likely compromise position that they would have chosen. And I think that demonstrates the prejudice. Additionally, criminal trespass to a residence is a Class A misdemeanor, whereas residential burglary is a Class 1 felony. He couldn't have gotten a four-year prison sentence had he been convicted of that lesser offense. Counsel, let me ask you about the fact that the jury conference was held after the state arrested him before the defense case. Yes. Do you want to make any comment on that? Well, you know, I think it's more proper to hold it after all the evidence has been admitted because then it's clear what instructions would be appropriate. Here, they held it before Mr. Gallagher testified. And I think the crucial thing for the ineffective assistance argument is that after his request was denied to get a lesser included instruction, the defense counsel still put Mr. Gallagher on the stand. And Mr. Gallagher, knowing that Mr. Gallagher was going to concede that the first two elements of residential burglary were proven, that he had entered the room unauthorized, this means that he didn't have ever abandoned his strategy of going for a lesser included offense because he had his client go up there and give testimony that supported it. He wasn't going for an all or nothing defense. The one he offered at the jury instruction conference was the wrong one. Yes. He offered, I believe it's IPI 1611, 1611A, and 1612, which are for criminal trespass to real property. And there's two problems with those instructions. One, they specifically applied to land or buildings other than a residence. In this case, it was residential burglary in the charging instrument, specifically said it was Mr. Burks' dwelling place. And second, they all required a showing of notice, and there was no evidence of notice. That was even more clear after Mr. Gallagher's testimony. He enters the room. Mr. Burks says, hello, is someone there, something to that effect, and he backs out. The trial judge made some comment about the notice requirement in denying the offer of the instruction. She said there was no implied notice, although the defense lawyer tried to say the locking of the door, the fact that Mr. Burks testified that he had securely locked the door, that was implied notice. So when the trial judge said that, was that a clue that she didn't think that that was the right instruction? Yeah. Yes, Your Honor, I think it was more than a clue. I think the trial judge's analysis there was correct. The legislature has made clear there's a distinction between burglaries and trespasses of residences and of non-residences. And, you know, residences are held more sacrosanct. The residential burglary statute corresponds to the criminal trespass to a residence statute. And those instructions just don't fit with the evidence or with the way the crime was charged here. In conclusion, if there's not any further questions, I'd just like to reiterate that the relief we're asking for is that we're not asking for a complete reversal of Mr. Gallagher's conviction. We're asking for a reduction of his offense from residential burglary to criminal trespass to a residence. And if the court's not in the trial, though, his attorney kept insisting that there was no criminal trespass to the residence. He did it in the opening. He did it in his closing. Throughout the trial, your client's story was he had this dire need to use a bathroom. That was so he went into the private hotel room. And when he disturbed the resident of the hotel room, he fled. And he didn't use a bathroom well over maybe two hours later. He was detained in a security room for over an hour and never requested going to the bathroom. Well, I think that is a criminal trespass for him to enter the hotel room without authority. Certainly. His argument, and so that's what we're asking the charge to be reduced to. His argument throughout trial was that he didn't have the intent to commit theft. And that's why it was necessary to have that lesser included instruction there. In terms of the evidence about him not going to the bathroom, he did say he went into the room to use the bathroom. And then he said that he was detained for. If the opening and the closing, the attorney, his attorney continued to pitch the jury that there was never a residential trespass or a violation, why wasn't the court correct in denying that instruction? The court was correct in denying the instruction that was offered. Defense counsel offered the wrong instruction. And defense counsel, what I want to make clear is defense counsel didn't argue that this wasn't a residence. There was some indication in the state's brief that his position was that the hotel room wouldn't count as a residence if it was empty. But that's not the case. That's what the defendants and People v. Moore argued. And this court rejected that proposition. It's a residence whether or not anybody's inside. And it's certainly a residence no matter whether the person trespassing thinks it's a residence or thinks someone's inside. Thank you. If that's all, I'll reserve the rest for rebuttal. Thank you. Thank you. May it please the court, counsel, I'd like to address the jury instruction. I'm sorry, Christine Cook, assistant state's attorney. I'd like to address the instruction issue first. What counsel fails to do is recognize the valid strategy that was in place in this trial. What he wants this court to do is to retry this case using a different strategy, thereby establishing counsel's incompetence in vein number two. This is what defense counsel did. They attacked this residential burglary under kind of unusual circumstances because it was a hotel room under two veins. Before the defendant testified, defense counsel specifically and creatively attempted to take the sting out of the residential burglary in front of the jury by making this a trespass to land case. Certainly a jury isn't going to be as offended by the notion that somebody's trespassing on somebody's land versus somebody's home. It didn't work. It wasn't viable. But they tried and they were creative about it. As Justice Cunningham noted, defense counsel said, well, there's implied consent with the lock and the door handle, so we can get into the land issue for the lesser included offense, and it was properly rejected. But a creative notion. And then they attacked the intent to steal on another front by presenting the defendant's testimony. The defendant's testimony was incredible. Even a cold record on appeal demonstrates that this guy was nothing short of a goof. Defense counsel had no idea what this guy was going to say at the trial, and even this appellate court can understand that this was probably a comical trial once this guy hit the stand. Once he hits the stand, he makes an enormous concession. Oh, I walked into the room, and I realized there's bags there, and that there's people there, and I realized I committed a terrible mistake, and I just needed to get out of there. That's the factual issue that the jury was able to excuse if they believed him. That was a credibility issue. The jury, of course, didn't believe him because the facts in this case were crazy. They — Well, counsel, can you speak to your opponent's comment that defense counsel offered the wrong instruction? If we agree with you that this — that he absolutely — that defense counsel absolutely chose to use the strategy of criminal trespass to land because that seemed less offensive than trespass going into somebody's residence, you know, why isn't that the wrong instruction? Because it's not a wrong instruction. What they were trying to do were two different things. They were trying to get rid of the notion that this was a residence, and that was a creative attempt by trying to get this into land versus residence. It didn't work. That's not what he said. Because he says in his opening statements, with all due respect, Your Honor, he says in opening statements, this is a trespass, but that's not before you. The question this court has to ask themselves is, was trial counsel incompetent? Was counsel trespassed to what? Exactly. That's exactly my point. They were trying to — That's his point, too. I know, but defense counsel, in the context of an ineffective assistance of counsel claim, the question isn't whether or not defense counsel failed in his attempt or took a shot in loss. The question is, did he understand the law regarding trespass to real property and trespass to residence, and was his decision one of strategy? That's the issue before this court. And this record makes it abundantly clear that those were matters of strategy. These counsels were not sitting on their hands. These were not morons. They understood what they were doing, and they made a strategic choice to try to move this thing into a different direction. Counsel, let me ask you this. The defense counsel, what did he offer? What jury instruction did he offer relative to the criminal trespass? 1611, 1611A, and 1612. Those were all trespass to real property. Right. Did he offer one to trespass to residence? No, and there's a reason why he didn't do that. Could it be he made a legal mistake? He messed up. No, because this record clearly shows that they understood all of the elements here and that they chose, once those instructions on the land were rejected, before he testified, okay, those were rejected before he testified. So their attempts to get out of the residential arena have failed. Now they're left with one strategy question. How are we going to attack the intent? We've got the residents in. We can't fight this. We've lost. So now we have to attack the intent to steal, and the only way we're going to be able to do that is by having this guy testify. Now, the fact that he went off on kind of a How do you know that? Because you can tell from those opening statements that they were aware of all of these possibilities. That's not evidence, counsel, the opening statement. You know that. Well, it's evidence before you. I understand that, but it's not evidence in the case. No, no, but it's evidence to show that they weren't incompetent, that these were made as a strategy. That's my entire point. By, if they would have, they could have conceded or asked for the criminal trespass to residents. But wait a minute. We don't know what the court would have done if they had offered that other instruction, do we? Well, according to the law, the judge would have been justified in rejecting that because the jury was justified in returning a verdict only on the greater offense. But we don't know what the judge would have done had that instruction been offered because it wasn't offered. Correct. Correct. However, in the motion. The point is that it should have been offered, and then if the judge rejected it, then your argument that, well, the judge was right in doing that would probably have some validity in response to his, but he's saying that the trial counsel basically messed up by not offering it in the first place. No. And I am trying to ask you is why, why doesn't that argument have some validity? Because by submitting the instructions on criminal trespass to a residence, they would have conceded that the defendant was guilty of something. Well, they did that anyway. No, the defendant did that. The defendant stepped on himself with all due respect. When he got up and testified, he's the one who blundered into this thing. So now defense counsels are stuck. Time out, counsel. The testimony that we read in the record, I mean, you're asking us to look behind whatever it is and saying that the defendant's defense counsel didn't know what he was going to testify to. How do you know that? All we have in front of us is the testimony, and by his own testimony, he admitted that he went into a room where he had no business going. That's evidence. Right. And I'm saying if that is the case, why isn't it appropriate for the residential trespass instruction to have been offered? For the same reason they chose not to have it offered. Because once the defendant testifies. How do you know they chose not to have it offered? If I may, if I may just finish. Once the defendant testifies and he blurts out, oh, I knew that the room was occupied, I knew I shouldn't have been there, I knew this was a terrible mistake, they're stuck with these facts now. These are in evidence. So what are the defense attorneys going to do with an admission on the record? All they can do at this juncture is hope for a complete acquittal. And by that, they start attacking the intent to steal. They get that out through the defendant. I went in there, I just wanted to go to the bathroom, this was a terrible mistake, and now the jury is going to decide, are we going to really hang this guy in a residential burglary when he just like accidentally went in there to go to the bathroom? That's a complete acquittal. This is a complete strategic move. This record does not support the notion that these defense attorneys were incompetent and had no clue what they were doing. They were attacking the residential area versus land early, before he testified, lost on that. And then they went for broke. Because this- Can you respond to your opponent's point about the important third option? Because I think everybody can agree that based on the testimony of the defendant himself and under these facts, he committed some kind of crime. He did something by walking into that room. What about, can you respond to the comment and established case law that the jury says, the law says that under these kinds of facts, the jury needs to have a third option to avoid convicting the defendant of something that's the greater offense, when he may in fact not be guilty of that, but they have no other option, they don't want to let him off. Of course they have the option. Can you respond to just that narrow point that I just asked you about? Yes. The jury absolutely had an option. It was called not guilty. Submitting this instruction- No, but part of my question was, they do not want to find him not guilty because they believe he is guilty of something, so it's all or nothing. And the whole point of the third option is, you don't let the person off because you think he's guilty of something, but the greater offense may not be what he's guilty of, so the law says, what about the third option? That's what I'm asking you. My response to that specific question, Your Honor, is that this happens in every case. A defense attorney will always have an option of submitting a lesser. You have an option of submitting a battery for a murder. In this case, what your opponent is saying is that it was a residential trespass instruction, which the defense attorney failed to submit. He failed to submit it. He chose not to submit it. That's exactly my point. How do you know that? Because of the opening statement, and because it was mentioned in the motion for a new trial. Because the motion for a new trial is drafted and say, I made a terrible mistake, I was incompetent, and I neglected to fail this. Most lawyers, very rarely, I can hardly remember a time, and I've been a lawyer for 30 years, where someone said, I made a terrible mistake, so I'm putting it in a motion, come on, counsel. It happens. And it's not all that infrequent either. It happens, okay? The record in this case does not support the notion that they were idiots and just submitted the wrong instruction. That's not what this record shows. They wanted to submit to the jury, yeah, this guy was trespassing, but that's not a residential burglary. And that's exactly the strategy that they placed before that jury. Every defense is going to be a gamble. Any appellate attorney can get up here and say, well, you guys screwed that up. You should have done this. Everything is going to be like that in hindsight. The issue before this court is, does this record support the notion of incompetence? And it absolutely does not. This record shows that they went to great lengths to try to defend this case. And the fact that they failed is not synonymous with incompetence of counsel. The record in this case shows that this man states he winds up on a 20th floor of a private hotel room because he's in dire need to go to a bathroom. The facts of this case show that he was in the bar in the lobby where he had access to a bathroom, that he went through the lobby and then also had access to a bathroom and wound up looking for another bar and somehow winds up on the 20th floor of a hotel where he is not a guest. And how, I don't know how he breaks into this room, but somehow he gains access to this room. He's not there to go to the bathroom. He's not in the bathroom. If you were in a room you thought were vacant, the bathroom is the first thing in every hotel room that's off that door. You flip on a light and say, oh, oh my God, I made a terrible mistake. Does he do that? Of course he doesn't do that. He flees and changes his clothes and alters his appearance in his attempt not to get away from an embarrassing situation but because he committed a residential burglary and he didn't want to get caught. I'd also like to briefly address the notions that the prosecutors engaged in any type of misconduct in this case by barring the defendant's drawings. The prosecutor didn't bar the defendant's drawings. The trial judge ruled in the people's favor. The defendant testified at great length that he was an artist specializing in southern folk art. He was on display in New Orleans, an online gallery in San Diego, Miami, and Washington, and that he was in Chicago on that day to market his wares to sell. But the backpack he was holding didn't hold anything that would support the notion that he was acting like an artist. Counsel misses the point of the prosecutor's argument. When he was in that hotel room, he wasn't acting as an artist. He was acting as a thief. Who walks around the city of Chicago while they're selling their wares with clothes and disguises? Thieves do something like that. What evidence of disguise is there? Certainly there is. He changed his clothing and he changed his hat and had glasses on. But to say that's a disguise, can people carry around an extra pair of clothing in their bag and not have it described as a disguise? Not in this situation. This case absolutely cries for that. And the prosecutor, I don't think, said disguise. Those are my words, but absolutely. Who walks out of a hotel room where you don't belong at 1030 at night and change your clothes? There's only one reason for doing that. The claim that he has been an artist was somehow withheld from this jury defies common sense and clearly defies this record. The prosecutor never vouched for anybody's credibility. The prosecutors never attacked defense counsel. What they attacked was the implausibility of this defense, which was simply silly. Didn't counsel suggest that he was lying about being an artist in his clothing? Yes, but not lying about being an artist in general. He was, the argument when taken in context was that this guy wasn't acting like an artist when he was up on the 20th floor taking money out of Mr. Butz's wallet. He was acting as a thief. That was the context of that argument. It was absolutely appropriate. The notion that defense counsels in this case somehow were set on their hands or were incompetent is absolutely belied by this record and by the law, which supports notions that matters are sound trial strategy unless established otherwise. Further, the law also shows that the jury is not, I will, the jury is justified in returning a verdict only on the greater offense, that lesser offense shall not be given. The defendant cannot establish prejudice because a jury did return a verdict based on the intent to steal on the residential burglary. So any notion that even had this jury instruction been given that he would have been convicted on the lesser is also belied by the record. For all of the reasons stated here today and those in our brief, the people respectfully request that this court affirm the conviction and sentence of residential burglary for Thomas Gallagher. Thank you very much. I'd just like to make maybe three short points. It doesn't matter if the defendant was a goof or if defense counsel was a moron. The matter of the fact is that defense counsel made a legal error and it prejudiced his client. This wasn't a strategic choice not to pursue the instructions on criminal trespass to a residence. As I think may have been brought out, counsel recognized in his motion for a new trial that he should have requested those instructions. In his motion for a new trial, he says the court should have given the instructions I requested on real property or should have given the instructions on trespass to a residence. It wasn't a strategic choice. If the one got rejected, he was just as able during trial to request both. If he really wanted real property, he could have said, court, I request 1611, 1611A, 1612. The court rejects it. Court, then you should consider 14, I think it's 14, 17, 17A, and 18. He had that option at trial just as he did after trial, but after trial he recognized that he had made that error. Another thing I want to address is in the matter of defense counsel's opening statement, it makes clear that defense counsel knew what Mr. Gallagher was going to testify to. It's pages 13 and 14 in the record. He refers to TG following women in an elevator up to the 24th floor. He refers to, and when I say TG, I mean Mr. Gallagher. He refers to Mr. Gallagher needing to use the bathroom. He refers to Mr. Gallagher seeing the door ajar and then backing out when he notices people in there. So it was clear he was familiar with what Mr. Gallagher was going to testify to, and he still put him on the stand to make that testimony after the request for a lesser included instruction was denied. So you disagree with your opponent's statement that the defendant got up here and testified in a way that surprises his defense counsel? I don't think there's any support for that proposition at all. As I said, defense counsel summarizes what Mr. Gallagher's testimony is going to be during his opening statement. And the reference to trespass, I think, makes clear that that was an option down the road. There was a hearing four months, I believe, before trial where defense counsel indicated that he was going to pursue a lesser included instruction. And most importantly, this wasn't some sort of play or something. He did request a lesser included instruction. And so by doing that, he was willing to concede the defendant committed a crime. No matter if it was the correct instruction or not, offering any lesser included instruction is a concession that a crime was committed in some regard. Finally, just to clarify about this disguise issue, the testimony was that he had, I believe, a striped button-up shirt on and a baseball cap when he entered the room. He takes off the cap, he takes off the button-up shirt, and he has a T-shirt underneath, and that's how he's caught. Mr. Burks testified that he was wearing sunglasses after the incident when he's down in the lobby again. But Ms. Hampton, the security guard, actually testified that she made eye contact with Mr. Gallagher and that she found sunglasses in his bag, I believe. And I think Officer Corral also testified that the sunglasses were in his bag. So basically what he did is he took off his button-up shirt and he took off his hat. And as he explained, he was embarrassed after walking into somebody else's hotel room. He was worried about getting caught for walking into somebody else's hotel room. There's a case, People v. Sosnowski, Illinois Supreme Court case, where someone's caught in the middle of the night in somebody else's apartment and then flees and I think resists arrest. And what the court said is being caught in the middle of the night in someone else's residence is reason enough to flee. It's justification enough to flee. It doesn't specifically go towards him having an intent to commit theft. That's the real issue here. That was the issue that defense counsel tried to litigate throughout trial, but defense counsel requested the wrong instruction. And because of this, the jury didn't have that option. So in closing, if there's no further questions, I just request that this court reduce his conviction to criminal trespass to a residence, or at the very least, grant him a new trial. Thank you. Thank you very much both counsel for a very spirited argument. This case will be taken under advisement. Please call the next.